**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

MARK ADKINS,               )
                                )
         Plaintiff,      )
                                )
    v.                     )      Civil Action No. 1:23-cv-0061 (RDA/LRV)
                               )
NICKWON ARVINGER, *et al.*,    )
                               )
                               )
        Defendants.     )
                               )

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's First Motion for Order Compelling Defendants to Show Cause Why They Should Not Be Held in Contempt and for Damages ("Motion for Show Cause Order") (Dkt. No. 55) and Plaintiff's Motion to Compel Compliance with Financial Terms of the Consent Judgment and the Settlement Agreement ("Motion to Compel Compliance") (Dkt. No. 60). For the reasons articulated below, the undersigned U.S. Magistrate Judge recommends that (1) the Court hold Defendants in civil contempt for their failure to comply with the Consent Judgment entered by the Court on September 27, 2023 (Dkt. No. 54); (2) the Court award Plaintiff a compensatory award of $5,000 for Defendants' violation of the Consent Judgment; (3) the Court order Defendants to immediately comply with the injunctive relief set forth in the Consent Judgment; (4) if Defendants fail to comply with the injunctive relief in the Consent Judgment within fifteen (15) days, the Court impose a daily fine of $1,000 until Defendants comply; (5) the Court order Defendants to immediately remit $66,600 to Plaintiff pursuant to the terms of the formal settlement agreement between the parties, which is incorporated by reference into the Consent Judgment; (6) if Defendants fail to remit $66,600 to Plaintiff within fifteen (15) days, the Court impose a daily fine

of $250 until Defendants make the required payment in full; (7) the Court order Plaintiff to submit a statement of reasonable attorneys' fees and costs incurred in bringing the Motion for Show Cause Order and Motion to Compel Compliance; and (8) the Court award Plaintiff's reasonable attorneys' fees and costs.

## I. Background and Proposed Findings of Fact

On January 13, 2023, Plaintiff Mark Adkins filed a complaint against Defendants Nickwon Arvinger; By Kiy, LLC; By Kiy Online, LLC; and Kiy Studios, LLC (collectively "Defendants"), alleging that (1) Defendants willfully infringed U.S. Copyright Registration No. VA 343-830 (the "'830 Registration") covering the below depicted image (the "SBC Logo"):



by reprinting the SBC Logo on apparel, namely, t-shirts, baseball caps and sweatshirts and then distributing the infringing apparel, as well as displaying the infringing apparel on social media; and (2) Defendants violated the Digital Millennium Copyright Act, 17 U.S.C. § 1202(b), by removing copyright management information ("CMI") from the SBC Logo and distributing merchandise with the CMI removed. (*See generally* Dkt. No. 1.) On March 9, 2023, Defendants answered the complaint and denied infringing upon the '830 Registration and denied violating the DMCA. (*See* Dkt. No. 15.)

On March 21, 2023, discovery opened in this matter. (*See* Dkt. No. 16.) On August 9, 2023, the undersigned held a settlement conference, at which counsel of record for all parties, as well as Plaintiff, appeared in person. Zak Kurtz, another of Defendants' attorneys, and Brian Sica, identified

2

as Defendants' creative director, appeared telephonically. (*See* Minute Entry, August 9, 2023.)  At the conclusion of the settlement conference, which lasted over six hours, the parties agreed to settle this litigation, and they memorialized the material terms of their agreement in a writing entitled Material Terms of Settlement Agreement ("MTSA"). (*See* Dkt. No. 42-1.)  The MTSA was signed by Plaintiff and his counsel, Mr. Frederick Samuels, Defendants and their counsel, Mr. J. Matthew Haynes, and the undersigned.[1]  On August 10, 2023, the Court issued an order staying all impending deadlines for 45 days. (Dkt. No. 41.)

As set forth in the MTSA, the parties were to "execute a joint settlement agreement within 14 days" of the MTSA's execution—i.e., by August 24, 2023—and the parties were to "submit a consent judgment within 10 days after execution of the joint settlement agreement" which "set[s] forth the injunctive relief" and "state[s] that the parties have agreed to settle for an undisclosed sum, to be paid in full by August 9, 2024." (Dkt. No. 42-1 at 2–3.)  Regarding the agreed injunctive relief, the MTSA provided that: (1) Defendants must remove and return to Plaintiff the SBC Logos from 471 hooded sweatshirts bearing Plaintiff's SBC Logo; (2) Defendants must not copy, publicly display, distribute, or make derivative works from the SBC Logo; and (3) Defendants must remove images of the SBC Logo from all social media pages, including but not limited to Instagram. (*Id.* at 2.)

On August 30, 2023, Plaintiff filed a Motion to Enforce Settlement Agreement (Dkt. No. 42), asserting that Defendants had failed to execute the formal settlement agreement as required by the MTSA by the deadline set forth therein and had also failed to comply with the injunctive relief set forth in the MTSA.  Later that same day, however, Defendants forwarded an executed copy of the formal written settlement agreement ("Settlement Agreement") to Plaintiff's counsel. (*See* Dkt. No.

---

[1] Brian Sica, who serves as digital director for the Defendant entities, executed the settlement agreement on behalf of all Defendants, including signing with permission on behalf of Defendant Nickwon Arvinger. (*See* Dkt. No. 42-1.)

62-1.)  On September 12, 2023, per the provisions of the Settlement Agreement, Plaintiff filed a Stipulation of Consent Judgment.  (Dkt. No. 46.)  On September 15, the Court held a hearing on Plaintiff's Motion to Enforce, at which the undersigned determined that the motion was moot because Defendants had already executed the Settlement Agreement and Plaintiff had also filed the proposed Consent Judgment with the Court.  (*See* Dkt. No. 52.)

On September 21, 2023, per the Court's instruction at the September 15 hearing, Plaintiff refiled the agreed Consent Judgment as a Joint Motion for Entry of the Consent Judgment (Dkt. No. 53), and the Court entered the Consent Judgment on September 27, 2023.  (Dkt. No. 54.)  As relevant here, the Consent Judgment entered by the Court provides that:

- Defendants are "permanently enjoined and restrained from: (a) copying the SBC Logo; (b) distributing copies of the SBC Logo; (c) displaying the SBC Logo; (d) removing copyright management information from the SBC Logo; [and] (e) making derivative works of the SBC Logo."  (*Id.* ¶ 5.)

- Defendants "shall immediately remove all images of the SBC Logo from all social media pages, including but not limited to Instagram."  (*Id.* ¶ 6.)

- Defendants "shall (1) remove and return to Plaintiff the SBC Logos from the approximately 471 sweatshirts on or before September 1, 2023; and (2) certify that they have no further inventory on or before September 1, 2023."  (*Id.* ¶ 7.)

- "The Parties have agreed to settle for an undisclosed sum, to be paid in full by August 2024.  The details of the amount and timing of the payment are set forth in the Settlement Agreement."  (*Id.* ¶ 8.)

On October 19, 2023, Plaintiff filed the instant Motion for Show Cause Order and Motion to Compel Compliance, asserting that Defendants have failed to comply with the terms of the September

27 Consent Judgment and requesting that the Court issue an order to show cause why Defendants should not be held in civil contempt for violating the Consent Judgment.  (*See* Dkt. Nos. 55, 60.) Collectively, Plaintiff's motions request that the Court hold Defendants in civil contempt for violating the Consent Judgment and issue an order requiring:

- Defendants to comply fully with the Consent Judgment;

- Defendants to pay Plaintiff compensatory damages in the amount of $5,000 for their failure to abide by the Consent Judgment;

- Defendants and/or Defendants' digital director, Brian Sica, to pay the Court a daily fine of $1,000 until such time as Defendants have complied with the injunctive relief set forth in the Consent Judgment;

- Defendants to pay the full remaining settlement amount (currently $66,600)[2] within ten days, as provided under the Settlement Agreement (which is incorporated by reference into the Consent Judgment), because Defendants have failed to make scheduled settlement payments as required;

- Defendants to pay a daily fine of $250 until such time as Defendants have satisfied the $66,600 payment; and

- Defendants to pay the attorneys' fees, costs, and expenses Plaintiff has incurred in connection with these civil contempt proceedings.

(*See* Dkt. Nos. 55-1; 56 at 7; 60-1; 61 at 6–8.)

On October 31, 2023, the Court granted in part Plaintiff's Motion for Show Cause Order (Dkt. No. 55), ordering Defendants to appear before the Court on December 1, 2023 and show cause why

---

[2] At the December 1, 2023 hearing, Plaintiff's counsel informed the Court that  $66,600 is the outstanding balance owed pursuant to the Settlement Agreement.  This amount takes into account partial payments that have been made (albeit late) since the filing of the motions in October 2023.

they should not be held in contempt of Court for failure to comply with the Consent Judgment. (Dkt. No. 65 at 3.) The Court also warned Defendants that, "should they fail to appear at the December 1, 2023 hearing, they may be held in contempt of court and that the relief requested by Plaintiff—including daily fines—may be imposed against them until Defendants are found to be in compliance with the Consent Judgment and this Court's orders." (*Id.*)

On November 28, 2023, Plaintiff filed a status report regarding Defendants' compliance with the Consent Judgment. (Dkt. No. 66.) Plaintiff reported that Defendants have made two payments totaling only $29,000 since the entry of the Consent Judgment and that Defendants have otherwise failed to (1) return the SBC Logos, (2) certify that they have no further inventory bearing the SBC Logos, and (3) remove the images of the SBC Logo from Defendant Arvinger's Instagram account, as required by the Consent Judgment. (*Id.* at 2.) Additionally, Plaintiff reported that Defendant Arvinger has posted additional photos on his Instagram account wearing a sweatshirt believed to bear the SBC Logo, in further violation of the Consent Judgment. (*Id.* at 3.) Defendants did not respond to Plaintiff's October 19, 2023 motions or November 28 status report.[3]

On December 1, 2023, the undersigned held a show cause hearing, at which counsel for Plaintiff appeared. (*See* Dkt. No. 69.) No counsel appeared for the entity Defendants, and Defendant Arvinger did not appear *pro se* or through counsel. Brian Sica, Defendants' digital director, appeared and spoke on his own behalf. Mr. Sica stated on the record at the hearing that he is not an attorney. He also is not a named defendant in this action. Accordingly, the Court did not allow Mr. Sica to

---

[3] On October 20, 2023, the Court granted the request of Defendants' counsel to withdraw as counsel in this matter (Dkt. No. 64), and to date, no other attorney has noticed an appearance for Defendants. Defendants are thus currently unrepresented by counsel in these post-judgment proceedings. As explained in the Court's October 20 Order, the entity Defendants By Kiy Online, LLC, By Kiy, LLC, and Kiy Studios, LLC, may not proceed *pro se*; instead, they must be represented by a member of the bar admitted to practice in this Court. Individual Defendant Nickwon Arvinger is permitted to proceed *pro se* should he choose to do so.

6

speak on behalf of Defendants at the hearing.  Because Plaintiff's motions request that "Defendants and/or Brian Sica" be held in contempt until such time as Defendants have complied with the Consent Judgment, and because Mr. Sica signed the MTSA on behalf of all Defendants, the undersigned allowed Mr. Sica to speak on his own behalf at the December 1 hearing.  (*See, e.g.*, Dkt. No. 55-1 at 2.)

At the hearing, Plaintiff's counsel, Mr. Samuels, reported that on November 30, 2023, his office received a shipment of exactly four hundred (400) SBC Logo patches, purportedly removed from the sweatshirts referenced in the MTSA and Consent Judgment.  As the SBC Logo patches appeared to be in pristine condition, with no marking suggesting that they had previously been sewn or otherwise applied to apparel and then removed, Mr. Samuels expressed doubt about whether the patches had actually been removed from any apparel in Defendants' inventory, or whether the patches were instead manufactured sometime after August 2023 and subsequently sent to Plaintiff.[4] Additionally, Mr. Samuels stated that a day or two before he received the patches, he received an email from Mr. Sica in which Mr. Sica stated that he had mailed the SBC Logos and provided a tracking number.  In the email, Mr. Sica further stated that Defendants intended to make an additional payment of $13,000.  (*See* Dkt. No. 70-1.)  Nevertheless as of the December 1 hearing, Defendants had neither certified that they have no further inventory bearing the SBC Logos, as required by the Consent Judgment, nor paid the full amount due under the Settlement Agreement (including late fees as set forth in the Settlement Agreement).

At the December 1 hearing, Mr. Sica stated that the patches mailed to Plaintiff's counsel had been removed from apparel in Defendants' inventory at his direction.  Mr. Sica, however, was unable

---

[4] At the December 1 hearing, Plaintiff's counsel brought and passed up to the Court a sweatshirt with the infringing SBC Logo, which Plaintiff previously purchased as evidence, and one of the stand-alone patches that Plaintiff's counsel received on November 30, 2023.

to answer several questions about the removal of the patches that reportedly was done at his direction. Indeed, the Court asked Mr. Sica who had performed the removal of the patches and Mr. Sica replied that he believed the removal was done by the Defendants' regular seamstress, but could not recall the name of the seamstress or company. He also was unable to provide information as to precisely when the apparel was provided to the seamstress for removal of the patches, and said he did not know what had happened to the sweatshirts after the patches were removed. At the conclusion of the hearing, the undersigned took the matter under advisement to issue this Report and Recommendation.

## II.    Proposed Conclusions of Law and Plaintiff's Requested Relief

### A.  Civil Contempt

"To ensure compliance with its orders, a district court has the inherent authority to hold parties in civil contempt. That power includes the ability to award damages and attorney's fees to an aggrieved party." *Rainbow Sch., Inc. v. Rainbow Early Educ. Holding*, 887 F.3d 610, 617 (4th Cir. 2018) (citations omitted).  A party may be held in civil contempt when

> there is clear and convincing evidence of four elements: (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's "favor"; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result.

*Id.* (quoting *United States v. Ali*, 874 F.3d 825, 831 (4th Cir. 2017)).  A court may therefore hold a party in civil contempt if it finds that the party knowingly violated a clear court order. *See In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995) ("Civil contempt is an appropriate sanction if we can point to an order of this Court which 'set[s] forth in specific detail an unequivocal command' which a party has violated." (quoting *Ferrell v. Pierce*, 785 F.2d 1372, 1378 (7th Cir. 1986))).  Notably, "a single violation of the injunction is sufficient to support a finding of contempt." *Rainbow Sch.*, 887 F.3d at 618.  Here, Plaintiff asserts that all four elements have been met and that Defendants should

8

thus be held in civil contempt for violating the Consent Judgment. (*See* Dkt. No. 61 at 7.)   The undersigned will address each element in turn.

### i.   *Defendants' Knowledge of a Valid Court Order*

First, the undersigned finds that the September 27 Consent Judgment is a valid order of this Court and that Defendants were aware of the Consent Judgment.   In Section IV of the executed Settlement Agreement, which is titled "Entry of Consent Decree," the parties agreed that "[s]imultaneously with the execution of this Agreement by the Parties, the Parties and their counsel shall execute a Consent Judgment . . . and within five business days of such execution, counsel for Adkins shall file the executed Consent Judgment with the Court for endorsement by the Court." (Dkt. No. 62-1 ¶ 6.)  Exhibit A to the Settlement Agreement is the proposed Consent Judgment. (*Id.* at 11–15.)  Accordingly, Defendants had actual knowledge of the proposed Consent Judgment, which they knew was to be submitted to the Court for its endorsement, and *at least* constructive knowledge of the same entered by the Court on September 27, 2023.  Moreover, on September 29, 2023, counsel for Plaintiff sent an email to Mr. Kurtz and Mr. Haynes (counsel for Defendants) and attached the September 27 Consent Judgment. (Dkt. No. 62-3 at 4.)  It is thus clear that Defendants had at least constructive, if not actual, knowledge of a valid Court order. *See, e.g.*, *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 459 (4th Cir. 2020) (civil contempt case involving stipulated consent order entered as part of settlement).

### ii.   *The Order Was in Plaintiff's Favor*

Second, the undersigned finds that the September 27 Consent Judgment was clearly in Plaintiff's favor. By the terms of the Consent Judgment, Plaintiff "is the owner of the copyright in the SBC Logo," Defendants must not "contest, directly or indirectly, the validity of or Plaintiff's ownership of the copyright in the SBC Logo or the '830 Registration," Defendants are permanently

enjoined from copying, distributing, and displaying the SBC Logo, and Defendants are to pay "an undisclosed sum" to Plaintiff.  (Dkt. No. 54 at 2–3.)  Accordingly, this element is satisfied.  *See Klopp*, 957 F.3d at 662 (assuming consent order with injunctive relief was in moving party's favor); *see also, e.g., Document Techs., LLC v. Taylor & Walker P.C.*, No. 2:19-CV-00614, 2023 WL 2059076, at *2 (E.D. Va. Feb. 16, 2023) ("On July 27, 2020, the Court entered a valid decree when it issued a judgment in favor of Plaintiff, requiring Defendant to pay Plaintiff a monetary sum of $300,000 in fixed installments.").

### iii.  *Defendants' Knowing Noncompliance with the Order*

Third, the undersigned finds that Defendants knowingly violated the terms of the September 27 Consent Judgment.  To date, Defendants still have not complied with all of the injunctive relief specified in the Consent Judgment and also have not satisfied the full payment due under the Settlement Agreement.  Specifically, as of November 27, 2023, images containing the SBC Logo were still publicly available on Defendants' Instagram pages (Dkt. No. 66 at 2; *see also* Dkt. No. 58 ¶¶ 2–4; Dkt. No. 58-2).[5]  Additionally, although Defendants have now provided Plaintiff with exactly 400 SBC Logo patches, they only did so on November 30, 2023—nearly three months after the September 1 deadline set forth in the Consent Judgment and more than two months after the Consent Judgment was entered by the Court. (*See* Dkt. No. 54 ¶ 7.)  Moreover, to date, Defendants have not certified that they have no further inventory bearing the SBC Logo.  (Dkt. No. 66 at 2.)  These actions are violative of at least paragraphs 5, 6, and 7 of the Consent Judgment.  (Dkt. No. 54 ¶¶ 5–7.) Finally, Defendants have failed to remit the full amount immediately owed under the Settlement Agreement, which is incorporated by reference in paragraph 8 of the Consent Judgment.  (*Id.* ¶ 8.)

---

[5] As of December 5, 2023, the hyperlinks to the posts in Plaintiff's exhibit (Dkt. No. 58-2) were still active.

Despite Plaintiff's repeated attempts to secure compliance with these obligations, Defendants have failed to communicate with Plaintiff or his counsel.  On numerous occasions in September and October 2023, Plaintiff's counsel contacted Defendants' representatives—including Defendants' prior counsel of record (Mr. Haynes), Defendants' other lawyer (Mr. Kurtz), and Defendants' digital director, Mr. Brian Sica (who executed the MTSA on behalf of Defendants)—in an attempt to secure compliance with the Settlement Agreement and Consent Judgment.  Until the emails exchanged between Mr. Samuels and Mr. Sica on November 28 through November 30, 2023, however, Defendants generally failed to respond and also continued to demonstrate noncompliance in defiance of the Consent Judgment.  (*See* Dkt. Nos. 62-2 through 62-4; Dkt. No. 57-3.)

For example, on September 29, 2023, Plaintiff's counsel emailed the September 27 Consent Judgment to Mr. Kurtz and Mr. Haynes and explained that Defendants were in contempt of several of its paragraphs.  (Dkt. No. 62-4 at 4; Dkt. No. 57-3 at 7.)  On October 4, 2023, Mr. Kurtz responded and stated: "When I spoke with Brian [Sica] last, he said that they were having issues taking the patches off and are being forced to destroy the sweatshirts.  He was working on getting a certificate of destruction to provide to you." (Dkt. No. 62-4 at 2; Dkt. No. 57-3 at 4.)  On October 10, 2023, after Defendants again failed to respond to emails from Plaintiff's counsel, Mr. Kurtz responded, with Mr. Sica copied, stating that "Mr. Sica is employed by Mr. Arvinger and can answer your questions regarding payments and the patches." (Dkt. No. 57-3 at 2.)  At the December 1 hearing, Plaintiff's counsel stated that Mr. Sica did not respond to his emails until November 28, when he informed Mr. Samuels that the SBC Logo patches were being shipped to Plaintiff. Prior to that, Mr. Kurtz's October 10 email was the last substantive correspondence that Plaintiff received from Defendants regarding the injunctive relief in the Consent Judgment.

Besides Defendants' mere failure to comply, Defendant Arvinger (and possibly the Defendant entities) appears to have taken additional *affirmative* actions in violation of the Consent Judgment. On November 19, 2023,[6] Defendant Arvinger posted a public Instagram "Story"[7] that included a photo of him wearing a sweatshirt believed to be the sweatshirt bearing the SBC Logo with the caption, "This Hoodie Lost me $100k" and stating that he would continue to wear the sweatshirt. (Dkt. No. 66 at 3; Dkt. No. 66-2.) Plaintiff asserts that "[t]his post is an obvious admission that the depicted hoodie includes the infringing SBC Logo." (Dkt. No. 66 at 3.) In another social media post, Defendant Arvinger again shared a photo of himself wearing what appears to be the same sweatshirt with the SBC Logo—this time in front of the Long Beach Convention Center, the site of the ComplexCon festival, a large public event that occurred on November 18–19, 2023.[8] (Dkt. No. 66 at 3; Dkt. No. 66-3.) Finally, although Plaintiff reports that Defendants made a $14,000 payment on October 30, 2023, this payment "did not cover the balance of what Defendant[s] owed on the first installment payment" under the Settlement Agreement, which was incorporated into the Consent Judgment. (Dkt. No. 66 at 2.) In an email dated November 28, 2023, Mr. Sica also promised that a

---

[6] Plaintiff's November 28 Status Report states that the post was made on October 19, 2023; however, pursuant to Plaintiff's representations at the December 1 hearing, the undersigned understands that the post was likely made on Sunday, November 19, 2023.

[7] An Instagram Story is a temporary post that is available to an account holder's followers for approximately 24 hours before it is automatically deleted unless made permanent by the user. *See* https://about.instagram.com/features/stories.

[8] Due to the angle of the two photos posted in November 2023, it is not possible for the undersigned to determine conclusively if the SBC Logo is in fact on the sweatshirt worn by Defendant Arvinger in the photos. At the December 1 hearing, Plaintiff's counsel provided a sweatshirt that, from the front and sides visible in the photos posted in November, appears to be identical to the sweatshirt worn by Defendant Arvinger in the photos. Notably, the SBC Logo is prominently featured on the back of the sweatshirt and the back is not visible in the two photos posted in November. None of the Defendants have provided any information to rebut Plaintiff's conclusion that the sweatshirt worn by Defendant Arvinger in the November photos (and purportedly worn to the ComplexCon festival) bears the SBC Logo.

$13,000 payment was forthcoming, but as of the December 1 hearing, the payment had not yet been made. (*See* Dkt. No. 70-1.)  The partial payment and communications about additional anticipated partial payments demonstrates that Defendants are aware of their payment obligations but are merely refusing to comply.[9]

Therefore, because Defendants have exhibited a clear pattern of deliberate noncompliance, the undersigned finds that Defendants have knowingly violated the Consent Judgment.

### iv. *Plaintiff Has Suffered Harm as a Result*

Finally, Plaintiff has been harmed by Defendant's noncompliance with the Consent Judgment.  As an initial matter, the undersigned agrees with Plaintiff that he "has not received the benefit of the bargain, i.e., he has not been paid the settlement amount on the schedule that was *agreed to by Defendants*" pursuant to the Settlement Agreement in exchange for agreeing not to continue pursuing his claims in this matter. (Dkt. No. 61 at 9 (emphasis added).)  Additionally, the Consent Judgment imposes certain injunctive relief intended to cure and prevent alleged violations of Plaintiff's rights in the '830 Registration. (*See, e.g.*, Dkt. No. 54 ¶ 7.)  Defendants have failed to comply with this injunctive relief (such as by removing social media posts bearing the SBC Logo and certifying that no further infringing apparel or other items remains in their inventory).  Moreover, it appears that at least Defendant Arvinger may have engaged in additional infringing conduct based on the recent posts to his social media account discussed above. (*See* Dkt. No. 66-2.)  Defendants' noncompliance with the Consent Judgment has caused Plaintiff to expend the time, fees, and costs

---

[9] As evidence that Defendants, collectively, are able to pay the settlement amount to which they agreed, Plaintiff offered a photo of another recent Instagram post on Defendant Arvinger's account, which features a large BMW SUV and a caption that indicates that the SUV is a gift from Mr. Arvinger to his mother. (*See* Dkt. No. 66-1.)  Similarly, in an October 3, 2023 Instagram post, Mr. Arvinger's account shared a photo of what appears to be a customized Mercedes van with a caption "Copped Benz Number 7 Today . . . ." (*See* Dkt. No. 62-5.)

13

associated with attempts to obtain Defendants' compliance with the Consent Judgment, including with respect to the instant motions. Accordingly, the undersigned finds that Plaintiff has been harmed and that this final element is satisfied.

    B. <u>Compensatory and Coercive Monetary Sanctions</u>

      District courts have wide discretion in fashioning civil-contempt remedies, including those that are "compensatory," incentivizing," or both. *Klopp*, 957 F.3d at 466 (quoting *Rainbow Sch.*, 887 F.3d at 620 (noting district courts "enjoy wide latitude in imposing an award that is both compensatory and incentivizing")). The Court may also award the movant's attorney fees and costs. *See Rainbow Sch.*, 887 F.3d at 617; *In re Gen. Motors*, 61 F.3d at 259. Here, Plaintiff requests that the Court impose a one-time compensatory fine of $5,000, a daily fine of $1,000 until such time as Defendants have complied with the injunctive relief set forth in the Consent Judgment, a daily fine of $250 until such time as Defendants have remitted the full $66,600 payment due under the Settlement Agreement, and an award of attorneys' fees incurred in connection with the instant motions. (*See* Dkt. No. 56 at 10–11; Dkt. No. 61 at 10.) As explained below, the undersigned finds that Plaintiff's requested sanctions are appropriate.

      First, the $5,000 compensatory fine is appropriate. Pursuant to the copyright laws, 17 U.S.C. §§ 106, 501, 504, Plaintiff is entitled to seek statutory damages for Defendants' willful infringement of his rights in the SBC Logo, in an amount of up to $150,000. (Dkt. No. 1 ¶¶ 40–52); *see* 17 U.S.C. §§ 504(c)(1)–(2). As discussed above, Defendants have failed to remove from social media photos bearing the SBC Logo or certify that no infringing apparel or other items remain in Defendants' inventory. (*See* Dkt. No. 58-2.) Per the Consent Judgment, the injunctive relief was to be satisfied by September 1, 2023. (Dkt. No. 54 ¶ 7.) A compensatory award of $5,000 is thus an appropriate sanction to compensate Plaintiff for Defendants' willful (and ongoing) violation of the Consent

14

Judgment. *See* 17 U.S.C. § 504(c)(1) (permitting an award of statutory damages "with respect to any one work" between $750 and $30,000); *see also, e.g., Buffalo Wings Factory, Inc. v. Mohd*, 574 F. Supp. 2d 574, 582 (E.D. Va. 2008) (awarding compensatory damages of $9,000 per week, equal to one-third of defendants' revenues incurred in violation of consent order involving trademark infringement).

Second, the requested daily fines are appropriate to incentivize Defendants' full compliance with the Consent Judgment.  Since August 2023, Defendants have continuously demonstrated unwillingness to comply with the terms of the parties' agreements and this Court's orders.  Thus, the undersigned finds it necessary and appropriate to impose a daily fine to incentivize Defendants' prompt compliance.  There is ample caselaw within the Fourth Circuit supporting the imposition of the requested daily fines of $1,000 and $250. *See, e.g., Certain Underwriters at Lloyd's, London v. AdvanFort Co.*, No. 1:18-CV-1421, 2020 WL 877981, at *1 & n.3 (E.D. Va. Feb. 21, 2020) (imposing $1,000 daily fine and noting it is "well-settled that the imposition of a daily fine to coerce a party into complying with a court's order is within a district court's civil contempt power"); *see also Enovative Techs., LLC v. Leor*, 622 F. App'x 212, 215 (4th Cir. 2015) (affirming the district court's imposition of a fine of $1,000 per day for civil contempt); *JTH Tax, Inc. v. Lee*, 540 F. Supp. 2d 642, 647 (E.D. Va. 2007) (imposing coercive fine of $500 per day for civil contempt).

Finally, Plaintiff asserts that the Court should award attorneys' fees because the parties' Settlement Agreement specifically provides that "the prevailing party in any such suit for breach of th[e] Agreement or for contempt or violation of the Consent Judgment or for or relating to copyright infringement of the SBC Logo shall recover its costs, expenses, and reasonable attorneys' fees from the other Party." (*See* Dkt. No. 62-1 ¶ 9.)  The undersigned agrees. *See Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*, No. 5:14-CV-482-BO, 2016 WL 7243538, at *3 (E.D.N.C. Dec.

15

14, 2016), *aff'd*, 887 F.3d 610 (4th Cir. 2018) (settlement agreement provided for an award of attorneys' fees in contempt proceedings).   Additionally, the undersigned finds that Defendants' willful and blatant violations of the Consent Judgment, as described above, justify an award of attorneys' fees in connection with these proceedings. *See Buffalo Wings Factory*, 574 F. Supp. 2d at 582 (awarding attorneys' fees pursuant to provision in promissory note and because defendants had "purposefully and continuously ignored their obligations under" a consent order).

## III.   Recommendation

For the reasons stated above, the undersigned recommends: (1) the Court hold Defendants in civil contempt for their failure to comply with the Consent Judgment entered by the Court on September 27, 2023 (Dkt. No. 54); (2) the Court award Plaintiff a compensatory award of $5,000 for Defendants' ongoing violation of the Consent Judgment; (3) the Court order Defendants to immediately comply with the injunctive relief set forth in the Consent Judgment and in particular, paragraphs 5, 6 and 7; (4) if Defendants fail to comply with the injunctive relief in the Consent Judgment within fifteen (15) days, the Court impose a daily fine of $1,000 until Defendants comply; (5) the Court order Defendants to immediately remit $66,600 to Plaintiff pursuant to the terms of the formal settlement agreement between the parties, which is incorporated by reference into the Consent Judgment; (6) if Defendants fail to remit $66,600 to Plaintiff within fifteen (15) days, the Court impose a daily fine of $250 until Defendants make the required payment in full; (7) the Court order Plaintiff to submit a statement of reasonable attorneys' fees and costs incurred in bringing the Motion for Show Cause Order and Motion to Compel Compliance; and (8) the Court award Plaintiff's reasonable attorneys' fees and costs. At this time, the undersigned does not recommend sanctions be imposed against the entity Defendants' representative Mr. Brian Sica individually.   The

recommended sanctions apply to Defendant Nickwon Arvinger, and to the Defendant entities By Kiy, LLC; By Kiy Online, LLC; and Kiy Studios, LLC.

**IV.    Notice**

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72(b), must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk of Court is directed to mail a copy of this Report and Recommendation to all Defendants at the following address listed for Defendants in the Settlement Agreement (Dkt. No. 57-1):

> 7221 Kennedy Blvd.
> Suite A
> North Bergen, NJ 07047

The Court also directs Plaintiff's counsel to send a copy of this Report and Recommendation to the email address with which Plaintiff's counsel communicates with Defendants or Defendants' representatives.

/s/ _LRV_
Lindsey Robinson Vaala
United States Magistrate Judge

**ENTERED** this 7th day of December, 2023.

Alexandria, Virginia

17